**STATE of Missouri, Respondent,**

v.

**Timothy M. WADAS, Appellant.**

**No. WD 66587.**

Missouri Court of Appeals, Western District.

June 5, 2007.

Shane L. Farrow, Jefferson City, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, PAUL M. SPINDEN, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Timothy Wadas appeals from his conviction by jury in the Circuit Court of Miller County of one count of driving while intoxicated, § 577.010,[1] contending that evidence of statements made by him to an unlicensed, uncertified sign language inter-

1. All statutory references are to RSMo 2000 unless otherwise noted.

preter were improperly admitted into evidence in violation of § 476.753.2. For the following reasons, Wadas's conviction and sentence are reversed, and the cause is remanded for further proceedings.

On February 20, 2005, at approximately 1:55 a.m., Jonathan Hasker, Chief of Police for the Lake Ozark Police Department, stopped a truck driven by Wadas after noticing that the truck was being operated without the headlights on. After Wadas stumbled "a little bit" getting out of the truck, Chief Hasker thought he smelled some kind of alcohol on him. Aware that Wadas was deaf and mute, after patting Wadas down, Chief Hasker wrote "License?" on a notepad. In response, Wadas wrote, "Not without my attorney." Following that response, Chief Hasker placed Wadas under arrest, handcuffed him, and drove him to the police station.

At the station, Chief Hasker contacted the Osage Beach Department of Public Safety to obtain the name and number of someone to interpret between himself and Wadas and was given the number of Judy Nichols. When contacted, Nichols agreed to come to the police station to interpret.

When she arrived at the station, in response to an inquiry by Wadas, Nichols indicated that she was not licensed or certified as a sign language interpreter. Nichols knowledge of sign language had been obtained through taking some sign language classes and through years of communicating with her deaf son and niece. After learning Nichols was not licensed or certified, Wadas stated that his lawyer had advised him not to communicate through anyone that was not a certified interpreter.

Chief Hasker read, and had Nichols interpret, the implied consent law to Wadas and asked Wadas to submit to a chemical test to determine his blood alcohol content. Wadas indicated that he wanted to consult with his attorney. Chief Hasker made three unsuccessful attempts to reach Wadas's attorney by telephone. After those attempts failed, Chief Hasker again asked Wadas to submit to a chemical test. When Wadas continued to insist on consulting with his attorney, Chief Hasker deemed him to have refused to take the chemical test and revoked his license.

On June 29, 2005, Wadas was charged by information with one count of driving while intoxicated, § 577.010. On December 1, 2005, Wadas was tried by jury and found guilty as charged. The trial court eventually sentenced Wadas to a term of four years in the Missouri Department of Corrections.

■■■ In his sole point on appeal, Wadas contends that the trial court erred in admitting into evidence statements made by Wadas through the interpreter because the police department used an unlicensed, uncertified sign language interpreter in violation of § 476.753.

■■ "Trial courts have broad discretion to admit or exclude evidence at trial" and will ordinarily be reversed only upon a showing of a clear abuse of that discretion. *State v. Sanchez*, 186 S.W.3d 260, 264 (Mo. banc 2006). "Questions of law, however, are reviewed *de novo*." *State v. Justus*, 205 S.W.3d 872, 878 (Mo. banc 2006). As the evidence is uncontroverted and the question raised by Wadas relates to the interpretation and application of § 476.753, the issue currently before us is a question of law subject to *de novo* review.

Section 476.753.1 requires "auxiliary aids and services" to be provided to a deaf person who is involuntarily detained or arrested based upon the deaf person's expressed needs. *Wadas v. Director of Revenue*, 197 S.W.3d 222, 224 (Mo.App. W.D. 2006). Section 476.753.2 goes on to state:

No answer, statement, admission or other information, written or oral, shall be admissible as evidence in any judicial or administrative proceeding if obtained from a deaf person who is involuntarily detained or arrested before an interpreter or auxiliary aids and services are provided to that deaf person, based on the deaf person's expressed needs.

Section 476.750 provides definitions for the terms utilized in § 476.753 and defines "auxiliary aids and services" as "the device or service that the deaf person feels would best serve him or her which includes, but is not limited to qualified interpreters, notetakers, transcription services...." § 476.750(1). "Qualified interpreter" is then defined as "an interpreter certified and licensed by the Missouri interpreter certification system or deemed competent by the Missouri commission for the deaf, who is able to interpret effectively, accurately and impartially both receptively and expressively, using any necessary specialized vocabulary." § 476.750(5). Furthermore, Section 476.756 provides:

No qualified interpreter shall be appointed ... pursuant to section 476.753, unless the designated responsible authority and the deaf person make a preliminary determination that the qualified interpreter or auxiliary aids and services are able to interpret effectively, accurately and impartially the statement of the deaf person and interpret the proceedings effectively, accurately and impartially to the deaf person.

Construing the provisions of § 476.753 in the context of all of the relevant related statutory provisions, this Court has previously held that § 476.753.2 "contemplates a 'qualified interpreter' within the meaning of Section 476.750(5) when it uses the word 'interpreter.'" *Wadas*, 197 S.W.3d at 226. We decline the State's invitation to reconsider its previous arguments and overrule our prior holding.

Pursuant to § 476.753, Wadas's statements should have been excluded from evidence. The trial court erred in ruling otherwise.

 Having determined that the admission of the evidence was erroneous, we must determine whether that error was sufficiently prejudicial to warrant reversal. *State v. Nichols*, 200 S.W.3d 115, 120 (Mo. App. W.D.2006). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006). We "will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* at 223–24.

In its closing argument, the State relied extensively on Chief Hasker and Nichols's testimony that Wadas refused to take a breath test after receiving the implied consent warning in arguing that the evidence established he was intoxicated. The other evidence of intoxication presented and relied upon by the State was Chief Hasker's testimony that Wadas was driving at night without headlights, that Wadas stumbled "a little bit" as he got out of his truck, that Wadas's eyes were watery and bloodshot, that Wadas smelled of alcohol, and his opinion that Wadas was intoxicated. While this other evidence was sufficient to support a conviction, it was far from overwhelming.[2]

Moreover, the interpreter testified that she did not smell alcohol on Wadas's

---

**2.** The State generally contends on appeal that the evidence against Wadas was overwhelming and that he, therefore, cannot have been prejudiced; however, it then develops its argument in terms of Chief Hasker's testimony being sufficient to support a conviction for driving while intoxicated and fails to explain how that evidence is overwhelming.

breath and that he was very steady on his feet. She stated that, in her opinion, Wadas was not intoxicated.

On the record before us, there is a reasonable probability that the trial court's erroneous admission of the statements made by Wadas to the interpreter affected the outcome of the trial. Accordingly, Wadas's conviction and sentence must be reversed and the cause must be remanded for a new trial.

All concur.